# UNITED STATES DISTRICT COURT

SOUTHERN    District of   NEW YORK

Christopher Gigante,

Plaintiff(s),

- against -

Metropolitan Life Insurance Company and
Bestfoods Long-Term Disability Plan,

Defendant(s).

**SUMMONS IN A CIVIL CASE**

CASE NUMBER:

# 05 CV 8727

# JUDGE LYNCH

TO: (name and address of defendants)

Metropolitan Life Insurance Company
One Madison Avenue
New York, New York   10010

Bestfoods Long-Term Disability Plan
c/o Board of Directors of Bestfoods
700 Sylvan Avenue
International Plaza
Englewood Cliffs, NJ 07632

**YOU ARE HEREBY SUMMONED** and required to serve upon PLAINTIFF'S ATTORNEY,
(name and address)

**BINDER & BINDER, P.C.**
**2805 Veterans Memorial Highway**
**Suite 20**
**Ronkonkoma, New York 11779**

an answer to the complaint which is herewith served upon you, within __20__ days after service of
this summons upon you, exclusive of the day of service. If you fail to do so, judgment by default
will be taken against you for the relief demanded in the complaint. You must also file your answer
with the Clerk of this Court within a reasonable period of time after service.

J. MICHAEL McMAHON

CLERK

_Marcos Quintero_

(BY) DEPUTY CLERK

DATE    OCT 1 4 2005

ORIGINAL

CHRISTOPHER GIGANTE,

                  Plaintiff,

    – against –

BESTFOODS SALARIED EMPLOYEES LONG TERM
DISABILITY INCOME PLAN, BESTFOODS SALARIED
EMPLOYEES LIFE INSURANCE PLAN, THE
PENSION & WELFARE COMMITTEE, as Plan
Administrator, and METROPOLITAN LIFE
INSURANCE COMPANY,

                  Defendants.

**05 CV 8727**

Action No.:

**COMPLAINT**

**JUDGE LYNCH**

Plaintiff, Christopher Gigante, by his attorneys, BINDER & BINDER, P.C., for his Complaint against the Defendants, Bestfoods Salaried Employees Long Term Disability Income Plan (the "LTD Plan"), Bestfoods Salaried Employees Life Insurance Plan (the "Life Plan"), the Pension & Welfare Committee, as Plan Administrator (the "Plan Administrator"), and Metropolitan Life Insurance Company ("Met Life"), hereby alleges as follows:

### JURISDICTION AND VENUE

1.    Jurisdiction of the Court is based upon 29 U.S.C. §§ 1132(e)(1) and 1132(f) which give the District Courts jurisdiction to hear civil actions brought to recover benefits due under the terms of several employee welfare benefit plans. In addition, this action may be brought before this Court pursuant to 28 U.S.C. § 1331, which gives the District Court jurisdiction over actions that arise under the laws of the United States.

2.    Under the Employee Retirement Income Security Act of 1974 (hereinafter, "ERISA") (29 U.S.C. §§ 1001 *et seq.*), the employee welfare benefit plans at issue in this litigation must contain provisions for administrative or internal appeal of denial of benefits. Plaintiff has exhausted all administrative avenues of appeal and has received a final denial. Therefore, this matter is properly before this court for *de novo* judicial review under Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101 (1989).

SERVICE
COPY

3. Venue is proper in this district pursuant to 29 U.S.C. § 1132(e)(2) which allows an action under Title I of ERISA, as amended, to be brought in the district where the plan is administered, where the breach took place, or where a defendant resides or may be found.

## STANDARD OF REVIEW

4. As detailed *infra*, Plaintiff was denied a full and fair review of the denial of his claim because the claims administrator, Met Life, failed to provide him with proper notice of its adverse decision.

5. As a result of this failure to allow Plaintiff to pursue his "administrative remedies," Plaintiff is entitled to a *de novo* review by this Court.

6. In addition, despite a specific and explicit request, Met Life and the LTD Plan have failed to provide Plaintiff's counsel with a full and complete copy of "all documents, records, and other information relevant to the claimant's claim for benefits," as defined and required by 29 C.F.R. § 2560.503-1(h).

7. As a result of this failure to comply with the applicable ERISA Regulations, as promulgated by the U.S. Department of Labor, Met Life and the LTD Plan's decision must reviewed *de novo* and Plaintiff must be allowed to conduct discovery into the completeness of the "administrative record."

## NATURE OF ACTION

8. This is a claim seeking a declaration that Plaintiff is entitled to disability benefits, including income and continuing coverage, pursuant to the terms and conditions of several employee welfare benefit plans.

9. Defendant, the LTD Plan, provides group long term disability ("LTD") benefits, sponsored and funded by Bestfoods Baking Company ("Bestfoods"). As Defendant, the LTD Plan, is an employee benefit welfare plan established and maintained by an employer or employee organization for the benefit of its employees, ERISA applies to this action. Said benefits were effective at all times relevant hereto.

10.     Claims for LTD benefits are administered pursuant to an insurance policy issue to Bestfoods by Met Life.  Met Life has made all claim decisions in this matter.

11.     Defendant, the Life Plan, provides group life insurance coverage and, in the event of disability, premium waiver benefits, sponsored and funded by Bestfoods.  As Defendant, the Life Plan, is an employee benefit welfare plan established and maintained by an employer or employee organization for the benefit of its employees, ERISA applies to this action.  Said benefits were effective at all times relevant hereto.

## THE PARTIES

12.     Plaintiff was born on December 14, 1962, is presently 42 years old, and is a resident of Island Park, New York.

13.     Defendant, the LTD Plan, is an employee benefit welfare plan as defined by ERISA, and its terms and benefits are the subject matter of this action.  The LTD Plan is sponsored and funded by Bestfoods.  The LTD Plan's designated agent for service of process is the Plan Administrator, located at 700 Sylvan Avenue, Englewood Cliffs, New Jersey 07632.

14.     Defendant, the Life Plan, is an employee benefit welfare plan as defined by ERISA, and its terms and benefits are the subject matter of this action.  The Life Plan is sponsored and funded by Bestfoods.  The Life Plan's designated agent for service of process is the Plan Administrator, located at 700 Sylvan Avenue, Englewood Cliffs, New Jersey 07632.

15.     The named plan administrator for the LTD Plan and the Life Plan is the Pension & Welfare Committee (the "Plan Administrator"), which is appointed by the Board of Directors of Bestfoods, with an address at 700 Sylvan Avenue, International Plaza, Englewood Cliffs, New Jersey 07632. Also, upon information and belief, Bestfoods was purchased by Unilever United States, Inc., sometime after Plaintiff became disabled.

16.     Defendant, Met Life, is a New York corporation licensed to conduct the business of insurance in New York State.  Met Life's address is One Madison Avenue, New York, New York 10010.  Upon information and belief, Met Life is both the Claims Administrator and the insurer for the LTD Plan.

## STATEMENT OF FACTS

**Plaintiff's Occupation:**

17.    Plaintiff began working for Bestfoods on September 15, 1997, as a Zone Marketing Manager, and continued working for the company for through April 12, 2001.

18.    Plaintiff had a demanding and stressful occupation. According to the job description provided by Unilever, Plaintiff's position required that he:

- Develop and execute the annual zone marketing plan in order to achieve zone business and volume goals.
- Develop, execute, and analyze trimester Drive Period Promotions.
- Lead Trade Spending Management through:
    – the development of the zone trade fund eliminating the need for national trade deals.
    – leading the implementation of the GELCO TIPS automated trade-tracking program within the zone.
    – management of the regional promotions budget within the zone ensuring through ongoing analysis the annual budget is spent effectively.
- Develop key customer P&L's in the zone and provide recommendations for appropriate corrective actions, as needed.
- Perform quarterly business reviews with regional sales managers, analyzing national programming, identifying product gaps, and providing recommendations for improvements.
- Develop and implement key customer sales programs working with Sales.
- Direct the execution of the local promotional activity as outlined in the annual plan. This will include direct mail, print advertising, premium offers, trade shows, and local public relations activities.
- Manage and disseminate sales and marketing information to the field sales level.
- Provide leadership to the zone support team (sales trainer, business development manager) in order to meet zone sales and marketing objectives.
- Provide marketing direction for sales reps in penetrating local/regional chains and retain deli.
- Share marketplace best practice/learns with business management team on a regular basis.
- Manage the zone culinarians.

19.    In addition, Plaintiff's occupation required that he travel extensively in the performance of the above duties, and as a result of the significant amount of time spent traveling, his occupation would be classified as "Light Work" according to the classifications standards of the DICTIONARY OF OCCUPATIONAL TITLES (4th Ed. 1991).

20.     Plaintiff's pre-disability income was approximately $77,500 per year.

21.     For the period beginning prior to April 11, 2001, Plaintiff, together with other regular employees of Unilever, was covered as a participant under the LTD Plan and the Life Plan.

**The Terms of the LTD Plan:**

22.     The LTD Plan provides for payment of monthly income benefits to participants of the LTD Plan who become disabled.

23.     The monthly benefit is determined based on a set percentage, in Plaintiff's case 60%, of pre-disability eligible compensation and reduced by other income benefits as these terms are identified in the LTD Plan, including Social Security disability benefits. LTD Plan Certificate of Insurance, p. 2. Thus, the LTD Plan and Met Life realize a direct financial benefit from a claimant's receipt of Social Security disability benefits.

24.     Moreover, Met Life and the LTD Plan actively enforce this financial benefit by requiring the claimant to apply for Social Security disability benefits and, in the absence of same, imposing a penalty, in the form of a reduction of the LTD benefit for estimated Social Security disability benefits (while the claimant is not receiving those benefits) if:

> You fail to:
> a.    apply for such benefits within a reasonable period of time;
> b.    file a request for reconsideration of a denied request for such benefits within a reasonable period of time; or
> c.    request a hearing before an Administrative Law Judge because of the denial, if we agree to pay for legal representation and for other costs which you incur in appearing at such hearing.

LTD Plan Certificate of Insurance, p. 17.

25.     In addition to providing for a financial penalty to a plan participant who does not timely apply for Social Security disability benefits, Met Life and the LTD Plan take an active role in the pursuit of Social Security disability benefits, through the LTD Plan's "Social Security Assistance Program," which provides, in part:

## SOCIAL SECURITY ASSISTANCE PROGRAM

> If you become Disabled Met Life provides you with assistance in applying for Social Security disability benefits. . . .

\*          \*          \*

**How Met Life Assists You in the Social Security Approval Process**

As soon as you apply for Disability Benefits, Met Life begins assisting you with the Social Security approval process.

1.  **Contact Prior to Application for Social Security Disability Benefits**

    Before you even apply for Social Security disability benefits, We will help you determine the best time to apply for Social Security disability benefits. A Met Life Case Management Specialist begins assisting you with the application process at that time. The Specialist personally contacts you by phone to explain, in detail, how to apply for Social Security disability benefits and the advantages of doing this. We provide you with a list of items needed by Social Security in order to complete your claim.

2.  **Assistance Throughout the Application Process**

    Met Life has a dedicated team of Social Security Specialists. These Specialists, many of whom have worked for the Social Security Administration, are also located within our Claim Department. They provide expert assistance up front and help guide you through the application process.

3.  **Guidance Through Appeal Process by Social Security Specialists**

    Social Security disability benefits may be initially denied, but are often approved following an appeal. If your benefits are denied, our dedicated team of Social Security Specialists provide expert assistance on an appeal if your situation warrants continuing the appeal process. They guide you through each stage of the appeal process. These stages may include:

    a.  Reconsideration by the Social Security Administration
    b.  Hearing before an Administrative Law Judge
    c.  Review by an Appeals Council established within the Social Security Administration in Washington, D.C.
    d.  A civil suit in Federal Court.

4.  **Social Security Attorneys and Vendors**

    Depending on your individual needs, Met Life may provide a referral to an attorney or vendor who specializes in Social Security law. The cost for these attorneys is deducted from the amount you must repay to us if the retroactive Social Security disability benefits you later receive result in Met Life having paid more Disability benefits than we should have paid.

LTD Plan Certificate of Insurance, pp. 35-38 (emphasis in original).

26.    The offset for Social Security disability (and other income) benefits is limited to the amount of the initial monthly award of such a benefit and does not include any cost of living adjustments provided by Social Security. LTD Plan Certificate of Insurance, p. 36.

27.    In this case, Plaintiff's Social Security disability benefits did not commence until after the 24 month maximum benefit period had expired, giving him a net benefit of $3,875 per month.

28.    With respect to the commencement of benefits, the LTD Plan provides: "Payment of the Monthly Benefit will start on the date one month after completion of the Elimination Period. Subsequent payments will be made each month thereafter. . . ." LTD Plan Certificate of Insurance, p. 8.

29.    The LTD Plan's Elimination Period is the first 180 days of disability, which in Plaintiff's case has already been met and benefits were to commence on October 9, 2001. LTD Plan Certificate of Insurance, p. 2.

30.    The LTD Plan contains a maximum 24-month benefit period for disabilities which result from a mental or nervous condition. LTD Plan Certificate of Insurance, p. 4. In Plaintiff's case, the maximum benefit period is until October 9, 2003.

31.    The LTD Plan defines "Disability" as follows:

> **Definition of Disability**
> "Disabled" or "Disability" means that, due to sickness, pregnancy or accidental injury, you are receiving Appropriate Care and Treatment from a Doctor on a continuing basis; and
> 1.    during your Elimination Period and the next 18 months period, you are unable to earn more than 80% of your Predisability Earnings or Indexed Predisability Earnings at your Occupation for any employer in your Local Economy; or
> 2.    after the 18 months period, you are unable to earn more than 60% of your Indexed Predisability Earnings from any employer in your Local Economy.
> Your loss of earnings must be a direct result of your sickness, pregnancy or accidental injury. Economic factors such as, but not limited to, recession, job obsolescence, paycuts and job-sharing will not be considered in determining whether you meet the loss of earnings test.

LTD Plan Certificate of Insurance, p. 10

32.    The LTD Plan defines "Appropriate Care and Care" as follows:

> "Appropriate Care and Treatment" means medical care and treatment that meet all of the following:

Page 7 of 26

1.  it is received from a Doctor whose medical training and clinical experience are suitable for treating your Disability;
2.  it is necessary to meet your basic health needs and is of demonstrable medical value;
3.  it is consistent in type, frequency and duration of treatment with relevant guidelines of national medical, research and health care coverage organizations and governmental agencies;
4.  it is consistent with the diagnosis of your condition; and
5.  its purpose is maximizing your medical improvement.

LTD Plan Certificate of Insurance, pp. 10-11.

33.  The LTD Plan defines "Doctor" as follows:

"Doctor" means a person who: (i) is legally licensed to practice medicine; and (ii) is not related to you. A licensed medical practitioner will be considered a Doctor:
1.  if applicable state law requires that such practitioners be recognized for the purposes of certification of disability; and
2.  the care and treatment provided by the practitioner is within the scope of his or her license.

LTD Plan Certificate of Insurance, p. 11.

34.  The LTD Plan defines "Occupation" as follows:

"Occupation" means the activity that you regularly perform and that serves as your source of income. It is not limited to the specific position you held with your Employer. It may be a similar activity that could be performed with your Employer or any other employer.

LTD Plan Certificate of Insurance, p. 11.

35.  The LTD Plan defines "Local Economy" as follows:

"Local Economy" means the geographic area surrounding your place of residence which offers reasonable employment opportunities. It is an area within which it would not be unreasonably for you to travel to secure employment. If you move from the place you resided on the date you became Disabled, we may look at both that former place of residence and your current place of residence to determine local economy.

LTD Plan Certificate of Insurance, p. 11.

36.  Met Life and the LTD Plan also provide disabled plan participants with additional benefits through a "Return to Work Program," which provides as follows:

## RETURN TO WORK PROGRAM

**Goal of Rehabilitation**
The goal of Met Life is to focus on Employees' **abilities**, instead of disabilities. The "abilities" philosophy is the foundation of our

Return to Work Program.  By focusing on what Employees **can do** versus what they can't, we can assist you in returning to work sooner than expected.

**Incentives For Returning To Work**
Your disability plan is designed to provide clear advantages and financial incentives for returning to work either full-time or part-time, while still receiving a Disability benefit.  In addition to financial incentives, there may be personal benefits resulting form returning to work.  Many Employees experience higher self-esteem and the personal satisfaction of being self-sufficient and productive once again.  If it is determined that you are capable but you do not participate in the Return to Work Program, your Disability benefits may cease.

**Vocational Rehabilitation Services**
As a covered Employee you are automatically eligible to participate in our Return to Work Program.  The Program focus is vocational rehabilitation, which means identifying the necessary training and therapy that can help you return to work.  In many cases, this means helping you return to your former occupation, although rehabilitation can also lead to a new occupation which is better suited to your condition and makes the most of your abilities.

There is no additional cost to you for the services we provide, and they are tailored to meet your individual needs.  These services include, but are not limited to, the following:

1. **Vocational Analyses**
   Assessment and counseling to help determine how your skills and abilities can be applied to a new or a modified job with your Employer.
2. **Labor Market Surveys**
   Studies to find jobs available in your locale that would utilize your abilities and skills.
3. **Retraining Programs**
   Programs to facilitate return to your previous job, or to train you for a new job.
4. **On-Site Job Analyses**
   Analyses to determine what modifications may be made to maximize your employment opportunities.
5. **Job Modifications/Accommodations**
   Changes in your job or accommodations to help you perform the previous job or a similar vocation, as required of your Employer under the Americans With Disabilities Act (ADA).
6. **Training in Job Seeking Skills**
   Special training to identify abilities, set goals, develop resumes, polish interviewing techniques, and provide other career search assistance.

LTD Plan Certificate of Insurance, pp. 39-40.

37.     With regard to the initiation of an LTD claim with Met Life and the Plan, the LTD Plan Certificate of Insurance provides as follows:

Page 9 of 26

**CLAIMS INFORMATION**

The completed claim form should be returned to your Employer who will certify that you are insured under the Plan and will then forward the claim form to Metropolitan.

When the claim has been processed, you or, if applicable, your Eligible Survivor will be notified of the benefits paid. If any benefits have been denied, you or, if applicable, your Eligible Survivor will receive a written explanation.

LTD Plan Certificate of Insurance, p. 43.

38.     With regard to administration, the LTD Plan specifically states:

The members of the Pension and Welfare Committee appointed by the Board of Directors of the Company (the "Committee") to administer its pension and welfare plans shall be the named fiduciaries of the Plan. The Committee shall be responsible for the management, operation and administration of the Plan.

Bestfoods Salaried Employees Long-Term Disability Income Plan, p. 12, ¶8.1 (emphasis in original).

**The Terms of the Life Plan:**

39.     The Life Plan provides for continuation of coverage at no cost to the plan participant for the basic life insurance coverage and continuation of coverage for the supplemental life insurance coverage if the plan participant pays the premiums if the LTD claim is approved:

**If You Are Disabled**
If you become disabled and collect benefits under the Long-Term Disability (LTD) Plan, your Basic Life Insurance will continue as long as you remain on LTD.

You may continue your Supplemental Life Insurance, Dependent Life Insurance, and Voluntary Accident Insurance while on disability as long as you continue to make the required contributions. You may not enroll for or increase your coverage while disabled.

The Summary Plan Description, p. L-13.

**Plaintiff's Disability:**

40.     Prior to April 11, 2001, Plaintiff had a history of panic attacks and depression, which escalated over the two year period prior to Plaintiff's total disability. He has been diagnosed, by his treating psychiatrist, George Nicklin, M.D., as suffering from Panic Disorder and Major Depressive Disorder, Recurrent.

41.     Plaintiff's panic attacks increased in frequency and duration immediately before and after his date of total disability.

42.     Plaintiff's psychiatric condition continued to deteriorate until he was unable to return to work after April 11, 2001.

43.     With regard to his panic attacks, Plaintiff's treating psychiatrist has advised Met Life and the LTD Plan that Mr. Gigante cannot predict or control them:

> Mr. Gigante experiences recurrent unexpected panic attacks. The frequency of Mr. Gigante's attacks has increased with a simultaneous increment in duration. There is no causal relationship underlying these attacks. Mr. Gigante can neither predict nor prevent the inception of an attack. He cannot cognitively negate or diminish the symptoms of the attacks.

44.     When experiencing a panic attack, Mr. Gigante experiences "frightening," debilitating symptoms, including:

> The Panic Attacks are characterized by physical symptoms – palpitations, chest pain, nausea, dizziness, as well as psychological manifestations – derealization (distortion of reality) and a pervasive fear of impending insanity, loss of control or death.

45.     Mr. Gigante's treating psychiatrist has stated that his Panic Disorder is further complicated, and worsened, by his Major Depressive Disorder, Recurrent.

46.     Dr. Nicklin has noted the "obvious manifestations" of the following symptoms of Major Depressive Disorder, Recurrent:

> 1.     depressed mood most of the day, nearly every day.
> 2.     diminished ability to think or concentrate, or indecisiveness, nearly every day.
> 3.     recurrent thoughts of death (not just of dying). In Mr. Gigante's case, this symptom has precluded focus on pragmatic considerations.

47.     As a result of these conditions, Plaintiff experiences severe, debilitating symptoms that severely impact his ability to function in any environment.

48.     As a result of Plaintiff's psychiatric condition, he is incapable of working at even a sedentary occupation, let alone his highly stressful, light occupation.

49.     Due to his debilitating psychiatric conditions, Plaintiff has not worked in any gainful employment since April 11, 2001.

50.     Plaintiff has received, and continues to receive, appropriate medical treatment for his numerous medical conditions from his primary care physician and appropriate treating specialists.

## PLAINTIFF'S FIRST CAUSE OF ACTION FOR
## LONG-TERM DISABILITY BENEFITS

51.     With regard to Plaintiff's claim for benefits under the LTD Plan, he continued to work through April 11, 2001.

52.     On or about April 11, 2001, Plaintiff advised his employer that he could no longer tolerate his multiple medical conditions, and he was unable to continue to work on a full-time basis. Plaintiff was thereby rendered totally disabled within the definition of the LTD Plan's description: "cannot perform each of the material duties of your regular occupation." Plaintiff continues to be so disabled.

53.     Plaintiff applied for, and received, Short-Term Disability ("STD") benefits through the Bestfoods sick leave program for the period of April 12, 2001, through October 9, 2001.

54.     While he was receiving STD benefits, Bestfoods eliminated his job and terminated his employment. As a result, he received three (3) months of severance pay, through January 15, 2002. As a result of the severance, Plaintiff was unaware that Met Life should have started paying him his LTD benefits as of October 9, 2001.

55.     In December 2001, Plaintiff contacted by telephone Nancy Stone of the Bestfoods Human Resources department to inquire as to what steps he had to take to initiate his LTD claim. At this point, Plaintiff's LTD benefits from Met Life and the LTD Plan were already two (2) months overdue.

56.     Ms. Stone advised Plaintiff that his medical records from his STD claim would be forwarded to Met Life by Bestfoods and misinformed him that his LTD benefits would begin January 16, 2002.

57.     In January 2002, Mr. Gigante contacted Met Life by telephone to confirm that Bestfoods had forwarded his claim information to Met Life for the LTD claim, and Met Life advised him that it had not received any information on his LTD claim from Bestfoods. At this point,

Plaintiff's LTD benefits from Met Life and the LTD Plan were already over three (3) months overdue.

57. 58.     Plaintiff immediately telephoned Bestfoods, and he was informed that, due to the merger between Bestfoods and Unilever, the employer had lost his records.

59.     On February 12, 2002, Bestfoods finally faxed to Met Life an Employer Statement and Job Description concerning Mr. Gigante's LTD claim. Absent from Bestfoods's fax was any of Plaintiff's medical documentation, which the employer claimed to have lost. At this point, Plaintiff's LTD benefits from Met Life and the LTD Plan were already 126 days overdue.

60.     By letter dated February 14, 2002, Met Life advised Plaintiff that it had received his claim from Bestfoods and enclosed additional claim forms for he and his doctors to complete. At this point, Plaintiff's LTD benefits from Met Life and the LTD Plan were already 128 days overdue.

61.     By letter dated April 9, 2002, Met Life advised Mr. Gigante that it was closing his claim because it had not received the completed claim forms it had requested on February 14th. At this point, Plaintiff's LTD benefits from Met Life and the LTD Plan were already 182 days overdue.

62.     By his May 30, 2002, letter, Plaintiff provided to Met Life the completed claim forms.

63.     Among the claim forms Met Life had requested were the following:

- Metropolitan Life Insurance Consent for Release of Social Security Information form;

- Authorization to Refer Me to a Law Firm for Assistance in Pursuing Social Security Disability Insurance Benefits form; and

- Authorization to Secure Award or Disallowance Information (from the Social Security Administration) form.

64.     Thus, from the moment it received Mr. Gigante's claim, Met Life was just as concerned about the status of his Social Security disability claim as it was with the medical information from his treating doctors.

65.     Rather than evaluating the information it had already received, Met Life waited until June 20, 2002, to request additional medical documentation from one of Plaintiff's treating doctors,

Dr. Hartman. At this point, Plaintiff's LTD benefits from Met Life and the LTD Plan were already 254 days overdue.

66.     On June 24, 2002, at Met Life's insistence, Plaintiff was forced to execute an "Agreement To Reimburse Overpayment Of Long Term Disability Benefits" form. At this point, Plaintiff's LTD benefits from Met Life and the LTD Plan were already 258 days overdue.

67.     On July 9, 2002, Dr. Hartman provided Met Life copies of the requested medical documentation via facsimile. At this point, Plaintiff's LTD benefits from Met Life and the LTD Plan were already 273 days overdue.

68.     Rather than reviewing Dr. Hartman's treatment notes, Met Life requested those same documents again from the doctor on July 31, 2002. Also, on that date, Met Life requested medical documentation from another of Mr. Gigante's treating doctors, Dr. Tandon. At this point, Plaintiff's LTD benefits from Met Life and the LTD Plan were already 295 days overdue.

69.     On September 14, 2002, Dr. Hartman provided Met Life with additional documents by facsimile transmission. At this point, Plaintiff's LTD benefits from Met Life and the LTD Plan were already 340 days overdue.

70.     Sometime in September 2002, Mr. Gigante received a telephone call from Jennifer Keenan at Met Life, who advised him that his LTD claim had been approved for the period of October 9, 2001, through May 31, 2002. During that phone conversation, Ms. Keenan never advised Plaintiff that his LTD claim had been denied or that he had 180 days to request review of the denial.

71.     By letter dated September 30, 2002, Met Life allegedly advised Plaintiff that his claim was only approved for a closed-end period and was denied after May 31, 2002 because it had determined that he could return to work. The September 30th letter allegedly advised Plaintiff that he had 180 days to request a review, and that the retroactive payment for October 9, 2001, through May 31, 2002, would be mailed separately.

72.     Mr. Gigante did not receive the September 30, 2002, letter until **November 2003** – after Met Life had already refused to review his claim because he had not timely appealed the denial.

73.     On October 11, 2002, Plaintiff responded to Met Life's request for information about his Social Security disability claim by providing the requested information by facsimile transmission.

74.    On October 14, 2002, Met Life sent a check to Mr. Gigante for partial payment of his LTD benefits for the period of October 9, 2001, through May 31, 2002. Nothing on that check indicated that Met Life had denied Plaintiff's claim, nor did it advise him of any appeal rights.

75.    On November 5, 2002, Met Life sent Plaintiff a second check for the additional amount due him under the LTD Plan for the period of October 9, 2001, through May 31, 2002. Again, nothing on that check indicated that Met Life had denied Plaintiff's claim, nor did it advise him of any appeal rights.

76.    By letter dated December 5, 2002, Plaintiff inquired from Met Life as to the status of his LTD claim and, inadvertently, requested an appeal:

> Dear Ms. Keenan,
>
> Thank you for all your help this past year with regards to my Long Term Disability Claim. I did receive the last check in the amount of $11,898.37, which reflected the social security portion of my disability benefits.
>
> Currently, I am still undergoing medical care and have not returned to work since I received my disability benefit last month. Kindly let me know if there are any steps I should take with regards to extending my disability benefits with Met-Life since there is no information in my company handbook with regards to this.
>
> I would appreciate any assistance you can provide. I can be reached at . . .

77.    Even though Mr. Gigante was unaware that his claim had been denied, his December 5, 2002, letter to Met Life should have been treated as an appeal by the carrier.

78.    Instead, Met Life ignored Plaintiff's December 5, 2002, appeal letter.

79.    Moreover, the copy of the claim file Met Life later provided to Plaintiff's counsel was missing this December 5th letter, as well as records concerning Met Life's telephone activity on this claim and other correspondence.

80.    Under ERISA, Met Life and the LTD Plan had 45 days to either notify Plaintiff of their decision on his claim or that they needed an additional 45 days to complete the review.

81.    Met Life and the LTD Plan's initial 45-day deadline to decide the appeal or notify the claimant expired on or about January 16, 2003.

82.     Had Met Life and/or the LTD Plan notified Plaintiff that additional review time was needed (which neither did), that second 45-deadline would have expired on or about March 2, 2003.

83.     By letter dated June 19, 2003, Plaintiff's treating psychiatrist, Dr. Nicklin, provided Met Life and Bestfoods with a narrative report and copies of his treatment records.

84.     Also, in June 2003, Plaintiff contacted Mary Mahoney and Roberta Levison at Bestfoods, who advised him that he was no longer an employee of the company's and his LTD claim could not be "re-opened."

85.     Finally alerted that his claim may have been denied (even though he still had not received the September 30, 2002, denial letter), Plaintiff asked Dr. Nicklin to write another letter to Met Life. Dr. Nicklin did so in a letter dated August 5, 2003.

86.     In that August 5, 2003, letter, Dr. Nicklin formally requested, on behalf of Plaintiff, that Met Life reopen his LTD claim. This was Mr. Gigante's second request for review.

87.     Dr. Nicklin advised Met Life that Mr. Gigante had never received the September 30, 2002, denial letter and advised the carrier of the serious impairments the claimant suffered as a result of his Panic Disorder and Major Depressive Disorder, Recurrent.

88.     Met Life did not respond.

89.     By letter dated September 11, 2003, Dr. Nicklin again wrote to Met Life and requested a response to his August 5, 2003, letter.

90.     By letter dated November 11, 2003, Met Life advised Plaintiff that it would not consider his claim any further because his appeal was untimely.

91.     Met Life completely ignored Plaintiff's December 2, 2002, appeal letter, and instead treated Dr. Nicklin's August 5, 2003, letter as the only appeal.

92.     In its November 11, 2003, letter, Met Life misstated that its initial denial of benefits letter was dated September 30, 2003.

93.     On November 14, 2003, Met Life corrected the misstatement in its November 11, 2003, letter.

94.     Enclosed with Met Life's November 14, 2003, letter refusing to further review his claim, Plaintiff finally received a copy of the carrier's alleged September 30, 2002, denial letter.

Page 16 of 26

95.     The September 30, 2002, denial letter stated that Plaintiff had 180 days from his receipt of said letter within which to request review by Met Life.

96.     As Mr. Gigante did not receive the September 30, 2002, letter until on or shortly after November 14, 2003, his 180-day appeal deadline should not have expired any earlier than May 12, 2004. Nonetheless, Met Life refused to consider Plaintiff's request for review.

97.     On November 23, 2003, Plaintiff sent a fax to Met Life again asking for review of his LTD claim.

98.     At or about the same time, Plaintiff also filed a complaint with the New York State Insurance Department.

99.     By letter dated November 28, 2003, the New York State Insurance Department asked Met Life to respond to Plaintiff's complaint.

100.    By letter dated December 15, 2003, Met Life advised the New York State Insurance Department that it had denied Plaintiff's claim on September 30, 2002, and it falsely stated:

- That Plaintiff had contacted the carrier on December 5, 2002, but had not questioned the status of his LTD claim, even though Mr. Gigante had done so by letter of that same date; and

- That Plaintiff had not timely requested review of the denial, even though Mr. Gigante's December 5, 2002, letter qualified as a request for review, and the 180-day appeal deadline could not have begun to run until November of 2003, when the claimant actually received the denial letter.

101.    Met Life also advised the New York State Insurance Department that its policy had been issued in New Jersey.

102.    By letter dated January 16, 2004, Plaintiff wrote to Bestfoods to ask the employer/plan administrator to intervene with Met Life to have his claim reviewed.

103.    At or about the same time, Plaintiff filed a complaint with the New Jersey Department of Banking & Insurance, which requested a response from Met Life by letter dated January 26, 2004.

104.    By letter dated February 5, 2004, Met Life essentially provided the same response it had provided to the New York State Insurance Department.

105. By letter dated March 18, 2004, Plaintiff's newly retained counsel asked to provide a full and complete copy of every relevant document on Mr. Gigante's claim.

106. Met Life responded by providing a total of 168 pages of documents.

107. Upon review of the 168 pages of documents provided by Met Life, numerous documents were noticeably missing, including without limitation: Plaintiff's December 5, 2002, appeal letter; and all internal Met Life notes (*e.g.*, telephone logs, file notes, internal reviews, *etc.*).

108. Plaintiff also applied for Social Security disability benefits and was awarded benefits "on the record," *i.e.*, without the need for a hearing. That is, the Social Security Administration determined that Plaintiff was disabled as defined by the Social Security Act: unable to engage in any substantial gainful activity (*see* 42 U.S.C. §416(i) – Definition of "Disability" in the Social Security Act).

109. Benefits under the LTD Plan are paid by Met Life from its own coffers, pursuant to an insurance policy it issued to the LTD Plan.

110. As a result, Met Life was operating under an inherent conflict of interest, which had a substantial and material effect on the carrier's handling of this claim and its ultimate decision to terminate Mr. Gigante's benefits.

111. Although the Plan Administrator delegated its decision-making power to Met Life, it failed to adequately monitor, and correct, Met Life's bad faith handling of this claim.

112. In seeking to further their own pecuniary interests, Met Life, the LTD Plan and the Plan Administrator have denied Plaintiff of his right to a full and fair review of the denial of his claim as required by ERISA.

113. Fiduciaries have a statutory obligation, in performing their duties, to act prudently and solely in the interest of plan participants and beneficiaries, and strictly in conformance with the provisions of the plan.

114. The Plan Administrator has failed to make any decisions concerning Plaintiff's claim for disability benefits. Rather, the long term disability claim decisions rendered in the instant action have been made by Met Life, which has a pecuniary interest in denying claims.

115.     Moreover, the Plan Administrator admittedly lost Plaintiff's claim documentation at the time of its merger, thus delaying the initial filing of Mr. Gigante's LTD claim with Met Life.

116.     The Plan Administrator's mistake was then compounded when its personnel failed to provide any assistance to Plaintiff or take corrective action against Met Life, despite Mr. Gigante's explicit request for help in June of 2003 and January of 2004.

117.     Fiduciaries also have a statutory obligation to fairly interpret and construe the terms of the plan and thereby make decisions in accordance with plan language.

118.     Met Life's decisions were not supported by the medical evidence and moreover, did not apply the language of the LTD Plan.

119.     Met Life's decisions in the instant claim were not supported by the evidence submitted with Plaintiff's claim.

120.     Plaintiff was and remains disabled within the terms and conditions of the LTD Plan. Plaintiff is, therefore, entitled to the receipt of monthly Long Term Disability benefits pertaining to his disability from the date benefits were terminated, May 31, 2002, through October 9, 2003, the expiration of the 24 month maximum benefit period, for a total due and owing to Mr. Gigante in the amount of $63,046.25.

### PLAINTIFF'S SECOND CAUSE OF ACTION FOR BENEFITS UNDER THE LTD PLAN'S SOCIAL SECURITY ASSISTANCE PROGRAM

121.     Plaintiff repeats and re-alleges the allegations contained in the Paragraphs number "1" through "120," as if fully set forth herein.

122.     As detailed above, under the LTD Plan and the applicable Certificate of Insurance, Met Life was required to provide Mr. Gigante with assistance with his application for Social Security disability benefits and any necessary appeals thereof.

123.     Met Life did not provide Plaintiff with any assistance on his Social Security claim, and instead, restricted its inquiries on this matter solely to ensuring that, if the claimant received any Social Security disability benefits, it would be entitled to recover any resulting LTD overpayment and reduce future benefits.

124.    As a result of Met Life's failure to provide Mr. Gigante with timely assistance on his Social Security disability claim, he was awarded Social Security with a later onset date than he would otherwise have been entitled to, thus delaying the commencement of said benefits until October 2003 – two years later than his benefits should have started.

125.    This delay on his Social Security benefits also caused a concurrent delay on Plaintiff becoming eligible for Medicare coverage, thus causing him to incur medical bills that would have otherwise been covered under his continued COBRA medical insurance or Medicare.

126.    Moreover, under the LTD Plan and Certificate of Coverage terms, the Social Security Assistance Program also required Met Life essentially to pay for the costs of any attorney services needed on Mr. Gigante's Social Security disability claim.

127.    Mr. Gigante was represented by BINDER & BINDER, P.C., in connection with his claim for Social Security disability benefits, and incurred legal fees in the amount of $3,183.50, to which Plaintiff is entitled to reimbursement from Met Life and the LTD Plan.

### PLAINTIFF'S THIRD CAUSE OF ACTION FOR BENEFITS UNDER THE LTD PLAN'S RETURN TO WORK PROGRAM

128.    Plaintiff repeats and re-alleges the allegations contained in the Paragraphs number "1" through "127," as if fully set forth herein.

129.    As detailed *supra*, Mr. Gigante, "As a covered Employee [was] automatically eligible to participate in our Return to Work Program. The Program focus is vocational rehabilitation, which means identifying the necessary training and therapy that can help you return to work. . . ." Certificate of Insurance, p. 39.

130.    When Met Life terminated Plaintiff's benefits without notice on September 30, 2002, it also failed to provide him with any of the vocational rehabilitation services available to him under the Return to Work Program.

131.    At the time Met Life terminated Plaintiff's LTD benefits, it was aware from Bestfoods that Mr. Gigante's employment had been terminated, thus leaving him no job to which to return.

132.    Plaintiff is entitled to vocational rehabilitation services from Met Life under the LTD Plan's Return to Work Program.

### PLAINTIFF'S FOURTH CAUSE OF ACTION FOR
### PENALTIES UNDER ERISA § 502(c)(1)

133.    Plaintiff repeats and re-alleges the allegations contained in the Paragraphs number "1" through "132," as if fully set forth herein.

134.    On or before March 18, 2004, Plaintiff, through counsel, requested copies of all documents relevant to Met Life's handling and decision on this claim:

> In order to properly evaluate Mr. Gigante's claim, and before a full and fair review can proceed, I must be provided with copies of all items upon which Met Life has relied in making its unfavorable determination. Accordingly, please provide me with a copy of Mr. Gigante's <u>entire</u> claim file. Moreover, to the extent that Met Life has relied upon individuals interpreting reports, examinations, *etc.*, or opining about a condition, it will be necessary that I receive all documents produced in connection with the evaluations. Please also include copies of all documents provided by Mr. Gigante's employer, including without limitation, any and all job descriptions.

> I am sure that Met Life is aware that the Employee Retirement Income Security Act of 1974 ("ERISA") and its regulations mandate the claims procedure to be followed in this case. Specifically, the revised 29 C.F.R. § 2560.503-1(h) requires a procedure by which a claimant shall have a reasonable opportunity for a full and fair review of the adverse benefit determination. As part of this review, the claimant must be provided, free of charge, copies of "all documents, records, and other information relevant to the claimant's claim for benefits." Furthermore, the regulations provide that a document is "relevant" if it:

>> (i)    Was relied upon in making the benefit determination;
>> (ii)   Was submitted, considered, or generated in the course of making the benefit determination, without regard to whether such document, record, or other information was relied upon in making the benefit determination;
>> (iii)  Demonstrates compliance with the administrative processes and safeguards required pursuant to paragraph (b)(5) of this section in making the benefit determination; or
>> (iv)   In the case of a group health plan or a plan providing disability benefits, constitutes a statement or policy or guidance with respect to the plan concerning the denied treatment option or benefit for the claimant's diagnosis, without regard to whether

such advice or statement was relied upon in making the benefit determination.

Any reports or documents related to or connected with a review of Mr. Gigante's medical records by a member of Met Life's medical department, or outside consultant, would be considered "relevant documents." Likewise, any reports or videotapes of the claimant obtained as the result of surveillance would fall within this definition of "relevant." Accordingly, these documents, to the extent any exist, must be produced.

Furthermore, Mr. Gigante is also entitled to copies of any official or unofficial documents which describe, adopt, implement, suggest, or otherwise relate to any internal policy for making claim determinations, regardless of whether such documents reference this particular claim. This would include any documents, manuals, or guidelines which describe, adopt, implement, suggest, or otherwise relate to any internal policy Met Life, or the Plan fiduciaries, for conducting a review of any adverse claim decisions.

Moreover, given the nature of Met Life's decision not to allow Mr. Gigante to pursue a review of its adverse decision, I must demand that Met Life provide me with proof of mailing with regard to the original of its September 30, 2002, letter.

135.    In response to this request, Met Life produced a 168-page claim file.

136.    Upon information and belief, Met Life has withheld significant portions of the claim file in violation of ERISA.

137.    Pursuant to ERISA § 502, Met Life was required to provide Plaintiff with all of the requested, relevant documents plan documents within 30 days of his request, or by April 17, 2004.

138.    Met Life has not provided copies of all of the requested documents, up to the date of the filing of this complaint.

139.    As a result of Met Life's failure, Mr. Gigante has been severely prejudiced.

140.    Defendant's failure to provide Plaintiff with copies of the requested documents has prejudiced Plaintiff by interfering with his ability to pursue his rights under the LTD Plan and will now require extensive discovery in this litigation to ensure completeness of the record.

141.    As a result of Met Life's failure to provide Plaintiff with the correct documents, and the resulting prejudice that Mr. Gigante has suffered, Plaintiff is entitled to penalties against Met Life in the amount of $110 per day, for the period of April 18, 2004, through the present and continuing until all of the requested documentation has been provided.

## PLAINTIFF'S FIFTH CAUSE OF ACTION FOR
## CONTINUED COVERAGE UNDER THE LIFE PLAN

142.   Plaintiff repeats and re-alleges the allegations contained in the Paragraphs number "1" through "141," as if fully set forth herein.

143.   The Life Plan provides for continued Basic Life Insurance coverage, at no cost to the plan participant, in the event the LTD Plan determines that he is disabled.

144.   Further, the Life Plan provides for continued coverage Supplemental Life Insurance, Dependent Life Insurance and Voluntary Accident Insurance, if the plan participant pays the required premiums when the LTD Plan determines that he is disabled.

145.   As detailed above, Plaintiff is entitled to a ruling by this Court that he is disabled within the terms of the LTD Plan.

146.   Accordingly, Plaintiff is entitled to continued Basic, Supplemental and Dependant Life Insurance and Voluntary Accident Insurance coverage under the Life Plan.

## PLAINTIFF'S SIXTH CAUSE OF ACTION FOR
## BREACH OF FIDUCIARY DUTIES

147.   Plaintiff repeats and re-alleges the allegations contained in the Paragraphs number "1" through "146," as if fully set forth herein.

148.   Defendant, the Plan Administrator, first breached its fiduciary duties in losing Plaintiff's disability claim forms during the merger between Unilever and Bestfoods, thus resulting in an unnecessary delay in the submission of Mr. Gigante's LTD claim to Met Life, and delaying his receipt of much-needed income.

149.   Defendant, the Plan Administrator, has breached its fiduciary duties in allowing Met Life to render all decisions on Plaintiff's claim for benefits, despite Met Life's conflict of interest and biased handling of this claim.

150.   Defendant, the Plan Administrator, has breached its fiduciary duties in failing to properly monitor the actions of Met Life and in failing to correct the biased, unfair and inequitable

handling of Mr. Gigante's claim, despite his specific request for the Plan Administrator's intervention on at least two (2) separate occasions.

151.    Defendant, Met Life, has breached its fiduciary duties by failing to provide Plaintiff with the relevant claim documents applicable to his claim, and thus prejudiced Mr. Gigante's rights under the LTD Plan.

152.    Defendant, Met Life, breached its fiduciary duties in failing to render a fair and impartial decision on Plaintiff's claim for benefits under the LTD Plan, and by rendering its adverse decisions in favor of its own financial self-interest.

153.    Defendant, Met Life, breached its fiduciary duties in failing to make a timely initial decision on Plaintiff's LTD claim.

154.    Defendant, Met Life, breached its fiduciary duties in failing to provide Plaintiff with timely notice of the denial of his claim.

155.    Defendant, Met Life, breached its fiduciary duties in failing to consider Plaintiff's December 5, 2002, request for review of the adverse decision on his claim.

156.    Defendant, Met Life, breached its fiduciary duties in failing to provide Plaintiff with a full, fair and meaningful administrative review of the denial of his claim.

157.    Plaintiff is entitled to equitable relief against Met Life and the Plan Administrator as a consequence of the Defendants' knowing and intentional breach of their respective fiduciary duties.

WHEREFORE, Plaintiff respectfully requests the following relief:

a.    That the Court declare and then determine that under the terms of the LTD Plan that the Plaintiff's disability began on or about April 12, 2001, and that he continues to be disabled within the LTD Plan's provisions;

b.    That after making such a determination, the Court grant Plaintiff appropriate legal and equitable relief and order Defendants, the LTD Plan, the Plan Administrator and Met Life, to compensate Plaintiff for his disability in the amount of $63,046.25, in accordance with the terms of the LTD Plan;

c. That after making such a determination, the Court grant Plaintiff appropriate legal and equitable relief and order Defendants, the LTD Plan, the Plan Administrator and Met Life, to compensate Plaintiff in the amount of $3,183.50, in accordance with the terms of the LTD Plan's Social Security Assistance Program and reimburse him for any and all medical expenses he incurred that would have otherwise been covered through his COBRA health insurance or Medicare;

d. That after making such a determination, the Court grant Plaintiff appropriate legal and equitable relief and order Defendants, the LTD Plan, the Plan Administrator and Met Life, to compensate Plaintiff in accordance with the terms of the LTD Plan's Return to Work Program;

e. That the Court determine and declare that, Defendant, Met Life, has knowingly and intentionally breached its fiduciary duties with respect to its administration of the LTD Plan, and grant Plaintiff appropriate equitable relief;

f. That the Court determine and declare that the Plan Administrator, by its failure to monitor and take corrective actions against Met Life, has knowingly and intentionally breached its fiduciary duties with respect to its administration of the LTD Plan, and grant Plaintiff appropriate equitable relief;

g. That after making such a determination, the Court grant Plaintiff appropriate legal and equitable relief and order Defendant, the Life Plan, reinstate and continue Plaintiff's coverage for Basic, Supplemental and Dependant Life Insurance and Voluntary Accident Insurance under the Life Plan;

h. That the Court award Plaintiff penalties against Met Life in the amount of $110 per day, for the period of April 17, 2004, through present and continuing until Met Life has produced full and complete copies of all documents relevant to this claim;

i. That the Court award Plaintiff his attorneys' fees pursuant to ERISA, 29 U.S.C. § 1132(g); and

j.      That Plaintiff receive such other necessary, proper and equitable relief, including

interest, costs and disbursements, as to which he may be entitled.

Dated: October 11, 2005
       Ronkonkoma, New York

                                        BINDER & BINDER, P.C.

                              By:       _____
                                        Harry J. Binder (HJB 5450)
                                        Attorneys for Plaintiff
                                        2805 Veterans Memorial Highway
                                        Suite 20
                                        Ronkonkoma, New York 11779-7682
                                        Telephone: (631) 361-6699
                                        Facsimile: (631) 607-2569